**UNITED STATE DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Bruce Mimnaugh, Individually and for Others Similarly Situated, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | Case No. ______________________ |
| v. | § | |
| Crown Cork & Seal USA, Inc. | § | |
| | § | FLSA Collective Action |
| | § | |
| Defendant. | § | |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Crown Cork & Seal USA, Inc. (Crown Cork) failed to pay Bruce Mimnaugh (Mimnaugh), and other workers like him, overtime as required by the Fair Labor Standards Act (FLSA).

2. CROWN CORK failed to pay Mimnaugh, and other workers like him, overtime pay that included shift differential pay and other non-overtime compensation that is required to be calculated into the regular rate of pay for purposes of determining the overtime rate.

3. Mimnaugh brings this collective action to recover unpaid overtime and other damages individually and on behalf of all other similarly situated workers nationally.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

5. This Court has personal jurisdiction over CROWN CORK because CROWN CORK conducts business in the Texas. Specifically, CROWN CORK has packaging plants in Texas cities such as Sugarland, Conroe and San Antonio where it employs hundreds of Texas residents. CROWN CORK also sells its products and services in Texas.

6. Venue is proper in this district pursuant to 28 U.S.C. 5 1391(b)(2) because the facts giving rise to this claim occurred in this district and, in particular, Mimnaugh worked for CROWN CORK at one of its plants located in this district.

## PARTIES

7. Mimnaugh was an hourly employee of CROWN CORK and currently resides in Conroe, Texas.

8. Mimnaugh worked for CROWN CORK from approximately May 2017 until August 2020. His consent to be a party plaintiff is attached as **Exhibit 1.**

9. CROWN CORK is a publicly traded (NYSE symbol CCK) Delaware corporation doing business at multiple plants in Texas, with its headquarters at 770 Township Line Road, Yardley, PA 19067. CROWN CORK may be served through its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas Texas 75201-3136.

## COVERAGE UNDER THE FLSA

10. At all relevant times, CROWN CORK was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

11. At all relevant times, CROWN CORK was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

12. At all relevant times, CROWN CORK was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as packaging materials and products, tools, cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce.

13. At all relevant times, CROWN CORK had an annual gross volume of sales made in excess of $1,000,000.

14. At all relevant times, Mimnaugh and the Putative Class Members (defined below) were engaged in commerce or in the production of goods for commerce.

**THE FACTS**

15. CROWN CORK is one of the largest packaging companies in the world. "With operations in 47 countries employing over 33,000 people and net sales of $11.7 billion, we are uniquely positioned to bring best practices in quality and manufacturing to growing economies in Asia, Eastern Europe, South America and the Middle East and North Africa." *See* https://www.crowncork.com/about-crown/facts-and-figures, last visited on October 30, 2020.

16. CROWN CORK employees over 1,000 production workers at its plants around the country.

17. Mimnaugh worked for CROWN CORK from May 2017 until August 2020.

18. Mimnaugh worked as a manual laborer/machine operator and was responsible for operating the automatic production machines and equipment to make packaging products such as aluminum cans.

19. CROWN CORK divides its employees into multiple categories based on job duties and whether the employee is paid hourly or salary. CROWN CORK classified Mimnaugh as a "manufacturing and production" hourly employee.

20. CROWN CORK classifies hundreds of other employees across the country as "manufacturing and production" hourly employees.

21. Mimnaugh reported the hours he works to CROWN CORK on a regular basis.

22. CROWN CORK paid Mimnaugh an hourly rate.

23. CROWN CORK does not pay Mimnaugh or class members a guaranteed a salary.

24. If Mimnaugh works fewer than 40 hours in a week, he was only paid for the hours works.

25. Mimnaugh regularly worked over 40 hours in a week.

26. Although he often worked more than 40 hours per workweek, CROWN CORK never paid Mimnaugh any overtime, but instead paid him a non-overtime "shift differential" and non-overtime "premium pay" for working undesirable shifts and for covering other employees who work a different shift when they could not show up for work.

27. By way of example and not limitation, during the workweek ending March 17, 2019, CROWN CORK paid Mimnaugh "shift" pay of $12.28; however, the company failed to factor in this shift differential pay into the "regular rate" as that term is defined in the FLSA. *See* 29 C.F.R. § 778.109. As a result, CROWN CORK failed to pay Mimnaugh his proper overtime pay. Likewise, in the same week, CROWN CORK paid Mimnaugh $77.72 in non-overtime "premium" pay. Such pay was likewise omitted from the regular rate of pay. Indeed, during this entire workweek, CROWN CORK failed to pay Mimnaugh any overtime at all.

28. By way of another example and not limitation, the same violation occurred during the work week ending on March 31, 2019. During that week, CROWN CORK paid Mimnaugh "shift" pay of $21; however, the company failed to factor in the shift differential pay into the regular "regular rate" as that term is defined in the FLSA. *See* 29 C.F.R. § 778.109. As a result, CROWN CORK failed to pay Mimnaugh his proper overtime pay. Likewise, in the same week, CROWN CORK paid Mimnaugh $169.70 in non-overtime "premium" pay. Such pay was likewise omitted from the regular rate of pay. Indeed, during this entire workweek, CROWN CORK failed to pay Mimnaugh any overtime at all.

29. Other “manufacturing and production” hourly workers suffered the same pay violation.

30. Rather than receiving time and half as required by the FLSA, Mimnaugh only receives "straight time" pay for overtime hours worked.

31. CROWN CORK's "straight time for overtime" payment scheme violates the FLSA.

32. CROWN CORK was and is aware of the overtime requirements of the FLSA, as their own handbook refences the FLSA.

33. CROWN CORK nonetheless fails to pay certain employees, such as Mimnaugh, overtime. CROWN CORK’s violation was not done in good faith.

34. Instead, CROWN CORK's failure to pay overtime to these workers was, and is, a willful violation of the FLSA.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

35. CROWN CORK's illegal "straight time for overtime" policy extends beyond Mimnaugh.

36. It is the "straight time for overtime" payment plan that is the "policy that is alleged to violate the FLSA" in this FLSA collective action. *Burrell v. Tommy's Seafood Steakhouse,* No. CIV.A. H06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006); *Wellman v. Grand Isle Shipyard, Inc.,* No. CIV.A. 14-831, 2014 WL 5810529, at *5 (RD. La. Nov. 7, 2014) (certifying "straight time for overtime" claim for collective treatment).

37. CROWN CORK has paid hundreds of workers using the same unlawful scheme.

38. Any differences in job duties do not detract from the fact that these workers were entitled to overtime pay.

39. The workers impacted by CROWN CORK's "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

40. Therefore, the class is properly defined as:

> **All manufacturing and production hourly employees of CROWN CORK nationally who were paid either a shift differential or other non-overtime premium pay that was excluded from the calculation of overtime pay when such employees worked more than 40 hours in a week, at any time from three years preceding the filing of this Complaint until the issuance of notice. (Putative Class Members).**

## COLLECTIVE CAUSES OF ACTION

41. Mimnaugh incorporates all previous paragraphs and alleges that the illegal pay practices CROWN CORK imposed on Mimnaugh were likewise imposed on the Putative Class Members.

42. Numerous individuals were victimized by this pattern, practice, and policy which is a willful violation of the FLSA. The law on non-overtime premium pay and shift differential pay has been clear for decades. “Where an employee receives a higher wage or rate because of undesirable hours or disagreeable work, such *469 wage represents a shift differential or higher wages because of the character of work done or the time at which he is required to labor rather than an overtime premium. Such payments enter into the determination of the regular rate of pay.” *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 468–69 (1948).

43. Numerous other individuals, like Mimnaugh, were paid in the same manner and were not properly compensated for all hours worked as required by the FLSA.

44. The Putative Class Members were all effectively paid straight time for overtime and not afforded overtime compensation when they worked in excess of forty (40) hours per week.

45. CROWN CORK's failure to pay wages and overtime compensation at the rates required by the FLSA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

46. The specific job titles or precise job locations of the various Putative Class Members does not prevent collective treatment.

47. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

48. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

49. Mimnaugh and the Putative Class Members are all entitled to their backpay, liquidated damages, attorney's fees, costs and such other relief to which they are entitled.

**PRAYER**

50. Mimnaugh prays for relief as follows:

a. An Order designating the Putative Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. 5 216(b);

b. For an Order pursuant to Section 16(b) of the FLSA finding CROWN CORK liable for unpaid back wages due to Mimnaugh and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

c. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

d. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */ s / Galvin Kennedy*
Galvin Kennedy
Galvin@KennedyAttorney.com
Federal Bar No. 20791
Texas State Bar No. 00796870
KENNEDY LAW FIRM, LLP
2925 Richmond Ave., Ste. 1200
Houston, TX 77098
Telephone: (713) 425-6445
Facsimile (713) 888-535-9271

AND

By: */s/ Raphael Katri*
Raphael Katri
RKatri@gmail.com
Texas State Bar No. 24106801
*Pro Hac Vice Pending*
LAW OFFICES OF RAPHAEL A. KATRI
8549 Wilshire Blvd., Ste. 200
Beverly Hills, CA 90211
Telephone: (310) 940-2034
Facsimile: (310) 733-5644

**ATTORNEYS IN CHARGE FOR PLAINTIFF AND PUTATIVE COLLECTIVE MEMBERS**